FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 21, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALFRED EARLE BROWN,<br><br>               Petitioner,<br><br>  v.<br><br>JAMES KEY,<br><br>               Respondent. | NO: 1:17-CV-3126-RMP<br><br>ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS |

BEFORE THE COURT is a petition for federal habeas relief, pursuant to 28 U.S.C. § 2254, by Alfred Earle Brown, a Washington state prisoner housed at the Airway Heights Corrections Center. The Court has reviewed Petitioner's Amended Petition for Writ of Habeas Corpus, ECF No. 12, Respondent James Key's Answer, ECF No. 15, the state court record, ECF No. 16, all other relevant filings, and is fully informed.

For the reasons set forth below, the amended petition is denied. A certificate of appealability will not be issued.

ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS ~ 1

# BACKGROUND

**A. Statement of Facts**

On August 18, 2014, Deputy Matthew Steadman and Sergeant Gillespie[1] responded to a report of an assault of Joanne Brown, Petitioner's mother. ECF No. 16 at 265, 271. Ms. Brown waited for the officers at a neighbor's house, and the officers first examined and interviewed her there. *Id.* at 270. Deputy Steadman observed that Ms. Brown had black eyes and bruising all over her face, arms, and neck. *Id.* at 271–72. Ms. Brown told Deputy Steadman that Petitioner had assaulted her. *Id.* at 273. Ms. Brown also represented that she told her doctor she fell down the stairs because she was afraid that Petitioner would kill her if she told the truth. *Id.* at 274.

After leaving the neighbor's house, the officers confronted Petitioner, who was standing at the gate to his mother's property. *Id.* at 266. He was visibly intoxicated.[2] *Id.* Deputy Steadman took Petitioner into custody on an outstanding felony warrant for his arrest. *Id.* While Deputy Steadman read Petitioner his *Miranda*[3] rights, Petitioner continually interrupted to say that he knew and

---

[1] The Court cannot locate Sergeant Gillespie's first name in the record.

[2] Deputy Steadman testified at the pretrial hearing that Petitioner's blood alcohol registered as .419 on his PBT. ECF No. 16 at 283. Deputy Steadman also testified that he did not "have any doubt that [Petitioner] was able to engage intelligently … and understand his rights" because "[h]e functioned." *Id.*

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS ~ 2

understood his rights. *Id.* at 268. At no time did Petitioner indicate that he wished to speak with an attorney or that he wished to remain silent. *Id.* at 269. After Petitioner was Mirandized, Deputy Steadman asked him about his mother's injuries. *Id.* at 268. Petitioner stated that his mother was injured when she fell down the stairs. *Id.*

The following day, Sergeant Russell interviewed Ms. Brown at her house. *Id.* at 21. He observed bruising on the front of her neck, under both eyes, including under her left eyelid on the eyeball itself, on her chest, and on her left bicep. *Id.* Ms. Brown represented that these injuries were sustained when "Alfred repeatedly pummeled her in the face with his fists." *Id.* Sergeant Russell wrote down Ms. Brown's responses on a sworn statement form. *Id.* At the conclusion of the interview, Sergeant Russell read the statement back to Ms. Brown, who certified its accuracy by signing it. *Id.*

On August 25, 2014, Sergeant Russell[4] received Ms. Brown's medical records, dated August 6, 2014, from Yakima Regional Medical Center. *Id.* at 22. The medical report indicates that Ms. Brown reported the date she sustained her injuries as August 1, 2014, and describes Ms. Brown's injuries as cellulitis of the face, closed head trauma, left knee contusion, left cheek contusion, severe

---

[4] The Court cannot locate Sergeant Russell's first name in the record.

ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS ~ 3

ecchymosis of the right cheek, left cheek, mouth, chin and left jaw, and two lip lacerations with signs of infection. *Id.*

**B. Procedural History**

On January 25, 2016, at the pretrial hearing, the court accepted the prosecution's amended information, charging Petitioner with third degree assault and felony harassment. ECF No. 16 at 237, 262. The original information had a date range of August 8 to August 18, 2014; the amended information changed the date for the offenses to August 1, 2014. *Id.* At the same hearing, the court also ruled that Petitioner's "statements to Deputy Steadman [were] admissible for all purposes." *Id.* at 296. Later that day, Petitioner entered an *Alford*[5] plea to third degree assault and felony harassment. *Id.* at 19. As a factual basis for the plea, Petitioner agreed that the court could rely on the statement of probable cause supplied by the prosecution. *Id.* The Declaration of Probable Cause states the following:

> On or about 8/8/14 the defendant, Alfred BROWN, did knowingly assault the victim at 3504 S 79th Ave., Yakima, Wa. BROWN became very upset when the victim removed a large light bulb that BROWN had placed in the bathroom. The large light bulb made it difficult for the victim to sleep.
> After the victim removed the light bulb, BROWN viciously attacked her. BROWN punched the victim with his closed fists about the head and face. These strikes caused the victim's eyes to swell and

---

[5] *North Carolina v. Alford*, 400 U.S. 25 (1970); *see also U.S. v. Mancinas-Flores*, 588 F.3d 677, 681 (9th Cir. 2009) ("An *Alford* plea is simply shorthand for a guilty plea accompanied by a protestation of innocence.").

> turn black and blue. The victim also suffered a deep cut to the L side of her lip. After striking the victim multiple times with his fists, BROWN picked up the victim and took her to her bedroom. BROWN threw her on the bed and began choking her with his hands. The victim suffered extensive bruising to the front of her throat as a result of BROWN choking her.
> BROWN resides with the victim at the victim's residence, 3504 S 79th Ave.
> The victim is BROWN'S 74 year old mother.

*Id.* at 27. On February 4, 2016, the court sentenced Petitioner to a maximum 60-month sentence on each count to run consecutively, an exceptional sentence for which the court found "substantial and compelling reasons." *Id.* at 324.

On February 16, 2016, Petitioner filed a notice of appeal in the Yakima County Superior Court. *Id.* at 36–40. On December 29, 2016, the Washington Court of Appeals affirmed Petitioner's conviction, finding no meritorious issues in the appeal. *Id.* at 34. Petitioner sought modification of the court's decision, which the Court of Appeals denied on March 3, 2017. *Id.* at 179. On June 28, 2017, the Washington Supreme Court denied review. *Id.* at 221. The following month, Petitioner filed a federal habeas petition, ECF No. 1, in this Court. Petitioner filed an Amended Petition, ECF No. 12, on November 30, 2017. This action is timely under the one-year limitation period set forth in 28 U.S.C § 2244(d)(1).

/ / /

/ / /

/ / /

ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS ~ 5

# LEGAL FRAMEWORK

## A. Exhaustion and Federal Jurisdiction

Before a state prisoner may be granted federal habeas relief, the prisoner must first exhaust all state remedies. *See* 28 U.S.C. § 2254(b)(1); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A prisoner exhausts state remedies by "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. It is unnecessary for a prisoner "to ask the state for collateral relief, based on the same evidence and issues already decided by direct review." *Id.* at 844 (quoting *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

Respondent's Answer states that Petitioner's double jeopardy claim is only partially exhausted. ECF No. 15 at 5. However, double jeopardy is not a claim raised by Petitioner. The record shows that Petitioner presented all of his federal claims at each stage of the appellate review process, and he supported these claims by citing Supreme Court cases. ECF No. 16 (Exhibits 3, 5, and 10). Petitioner was not required to file a petition for collateral review in state court, since he was already denied discretionary review by the Washington Supreme Court. The exhaustion requirement has been satisfied, and this Court has jurisdiction to review the amended petition.

## B. Evidentiary Hearing

A district court may rule on a habeas petition without an evidentiary hearing if the "issues [] can be resolved by reference to the state court record." *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994). Here, the state court record is sufficient to resolve all of Petitioner's claims without a hearing.

## C. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (PL 104-132) substantially amended 28 U.S.C. § 2241 seq., and governs review of habeas petitions filed after April 24, 1996. *See Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003); *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004). Under AEDPA, a district court looks to the final ruling of the highest state court and presumes the state court's factual findings are correct. *Miller-El*, 537 U.S. at 340. The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Here, since Petitioner was denied discretionary review by the Washington Supreme Court, this Court presumes Commissioner Wasson's findings for the Court of Appeals are correct. ECF No. 16 (Exhibit 2).

## DISCUSSION

Petitioner seeks federal habeas relief on the following grounds: (1) his *Miranda* waiver was unintelligent and involuntary; (2) his *Alford* plea was coerced

and involuntary due to ineffective assistance of counsel; (3) there were *Brady*[6] violations, suppressed evidence, unreasonable discovery delays, and a failure to exercise due diligence prior to the scheduled trial; and (4) his 120-month sentence was excessive. ECF No. 12 at 5–10.

Under AEDPA, federal habeas relief is limited to state prisoners who are being held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Once a state court has adjudicated a claim on the merits, a federal court may not grant habeas relief unless: (1) the state court "decision [] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"; or (2) the state court "decision [] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). This "highly deferential standard . . . demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal quotation omitted).

When the highest state court opinion cites only state law, the Court must ask whether the state law, as explained by the state court, is "contrary to clearly established federal law" on the issues in question. *Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001). Here, the Court will consider whether Washington law

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS ~ 8

as applied by Commissioner Wasson is contrary to clearly established federal law governing the four grounds presented in the amended petition.

### A. Involuntary *Miranda* Waiver

Petitioner contends that he did not waive his *Miranda* rights voluntarily, because a voluntary waiver is impossible at .419 blood alcohol concentration.[7] ECF. No 12 at 5. This issue became moot when Petitioner entered an *Alford* plea.

A criminal defendant who "admit[s] in open court that he is in fact guilty . . . may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also Marrow v. United States*, 772 F.2d 525, 527 (9th Cir. 1985) (applying *Tollett* to pre-plea confessions). *But see Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) (finding an exception for *Brady* claims). Petitioner maintains that he "did not admit nor stipulate to guilt." ECF No. 12 at 16. However, Petitioner pleaded guilty in open court on January 25, 2016. *See* ECF No. 16 at 307. Before Petitioner changed his plea to guilty, the trial court made clear that by entering an *Alford* plea, Petitioner was

---

[7] There is no post-*Miranda* confession at issue in this matter. Rather, Deputy Steadman's report that Petitioner "stated really smart-alecky that [Ms. Brown] fell down the stairs," ECF No. 16 at 268, may have been damaging to Petitioner had the matter proceeded to trial.

ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS ~ 9

pleading guilty. *Id.* When Petitioner changed his plea, the following exchange occurred:

> COURT: To the charge, then, of third degree assault and felony harassment of another alleged to have occurred on August 1st of 2014, how do you plead to those charges, guilty or not guilty?
> MR. BROWN: Guilty by an <u>Alford</u> plea.
> COURT: It's guilty or not guilty. Is it guilty or not guilty?
> MR. BROWN: Guilty.

ECF No. 16 at 307. Accordingly, once the plea was entered, Petitioner waived his *Miranda* claim. *See Tollett*, 411 U.S. at 267.

### B. *Brady* Violations

Petitioner contends that the prosecution withheld evidence until days before trial. ECF No. 12 at 8. The evidence, allegedly redacted discovery and recorded witness interviews, is not available for the Court's review because Petitioner entered a guilty plea before it could become part of the record. There is nothing in the record that indicates this evidence would have been "favorable to the accused, either because it [was] exculpatory, or because it [was] impeaching." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). In fact, Petitioner concedes that the recorded witness interviews were favorable to the State. ECF No. 12 at 8. Petitioner also acknowledges that he had access to the evidence before deciding to plead guilty. *Id.* For these reasons, *Brady* is inapplicable, and the state court adjudication of Petitioner's *Brady* claim does not warrant federal habeas relief.

In conjunction with his *Brady* claim, Petitioner also contends that his attorney failed to exercise due diligence. ECF No. 12 at 8. However, this is not a *Brady* issue; *Brady* only offers protection against prosecutorial suppression of evidence. *Brady*, 373 U.S. at 87. Petitioner's claims relating to defense counsel's errors are analyzed under an ineffective assistance claim.

### C. Involuntary *Alford* Plea Due to Ineffective Assistance of Counsel

Petitioner contends that his *Alford* plea was involuntary because his public defender gave him "no chance for a fair trial." ECF No. 12 at 7. In Washington, an *Alford* plea must be "made voluntarily, competently, and with an understanding of the nature of the charge and the consequences of the plea." *In re Pers. Restraint of Cross*, 180 Wash. 2d 664, 707 (2014). Before accepting an *Alford* plea, the trial court must be "satisfied that there is a factual basis for the plea." *Id*. A factual basis does not require that the trial court is convinced of defendant's guilt beyond a reasonable doubt; it only requires that "there is sufficient evidence for a jury to conclude that [the defendant] is guilty." *State v. Newton*, 87 Wash. 2d 363, 370 (1976) (quoting *United States v. Webb*, 433 F.2d 400, 403 (1st Cir. 1970)).

Petitioner contends that defense counsel's failure to investigate forced him to take a plea deal. ECF No. 12 at 7. Petitioner did not list ineffective assistance as a separate ground in his amended petition. Nevertheless, Petitioner's argument

regarding the representation that he received warrants analysis as a threshold issue to Petitioner's involuntary plea claim.

The two-prong test for ineffective assistance requires a showing that counsel's performance was deficient and that, as a result, the defendant was prejudiced. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For each prong, the defendant carries the burden of proof. *Id.* at 688, 696. In federal habeas proceedings, it is not enough to establish "a strong case for relief" under the two-prong test. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). In addition, "a state prisoner must show that the state court's ruling on the [ineffective assistance] claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.* at 103.

Deficient performance means "that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Courts are "highly deferential" to counsel's trial strategies. *Id.* at 689. Ineffective assistance challengers must overcome a strong presumption that counsel has "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Counsel is not required to investigate every potential lead; rather, counsel's duty is "to make reasonable investigations or to

make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691*; see also United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). (a defendant "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the [case]").

Petitioner contends that his public defender, Paul Kelley, failed to investigate several leads that could have produced exculpatory evidence. ECF No. 12 at 17–21. First, Petitioner asserts that Mr. Kelley failed to investigate an incident that occurred several days before his arrest. *Id.* at 18. Petitioner represents that Ms. Brown went looking for her dog, got her car stuck, and "somehow walked or hitch-hiked home." *Id.* Once home, Ms. Brown forgot where she had left the car, and a sheriff had to locate it. *Id.* Petitioner contends that investigating these events would have shown that Ms. Brown "has bouts of dementia and memory loss [where] she doesn't know what's going on." *Id.*

The fact that Ms. Brown suffered a memory lapse a couple of weeks after she was injured, but before she reported the assault, may have raised a question about her ability to recall events. But the same evidence could have been used by the prosecution to show aggravating circumstances. At best, the evidence would have cast doubt on the prosecution's version of events; at worst, it would have emphasized Ms. Brown's cognitive impairments and made Petitioner's crime look

more troubling. Mr. Kelley's decision not to investigate these events was "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, Petitioner asserts that Mr. Kelley "negated [and] minimized" the fact that Petitioner's knuckles and hands were unmarked when he was taken into custody. ECF No. 12 at 19. Petitioner was arrested on August 18, 2014, nearly three weeks after the assault. ECF No. 16 at 295. Even if Petitioner's hands had been marked or bruised at the time of the assault, it is entirely possible that they could have healed by the time he was arrested. Additionally, Mr. Kelley raised this issue at the pretrial hearing. *Id.* at 276. Deputy Steadman testified that he observed "nothing obvious" on Petitioner's hands and that "if there was bruising or cuts … [he] probably would have [seen] them." *Id.* By eliciting such testimony from Deputy Steadman, Mr. Kelley reasonably addressed the issue.

Third, Petitioner asserts that Mr. Kelley refused to look for blood residue on the stairs inside Ms. Brown's house. ECF No. 12 at 20. Petitioner concedes that an "investigator took a look at the stairwell, but did not swab for blood remnants, or residual bleach used to clean up the mess." *Id.* The Court must give significant deference to Mr. Kelley's decision not to pursue a more thorough investigation. *See Strickland*, 466 U.S. at 691. Petitioner offers no evidence to overcome the strong presumption that Mr. Kelley's decision not to investigate further was reasonable.

Fourth, Petitioner asserts that his counsel failed to investigate an alleged sibling rivalry for the inheritance of Ms. Brown's assets. *Id.* at 21. Petitioner represents that his sister "was actively manipulating [Ms. Brown's] weak and weary mind . . . into hating [him.]" *Id.* Besides these bare accusations about his sister's "malicious intentions," Petitioner does not allege with specificity what evidence would have been uncovered from an investigation into Ms. Brown's inheritance or how it would have helped his case. *Id.* Petitioner's assertion that this investigation should have been pursued is entirely speculative; Mr. Kelley made a reasonable decision not to pursue it.

The state court record does not undermine that Mr. Kelley made reasonable decisions about what to investigate and that he was prepared for trial. It is undisputed that Mr. Kelley had consistent contact with Petitioner, that he interviewed Ms. Brown on two separate occasions, and that he used an investigator to inspect Ms. Brown's house. *Id.* at 20. Furthermore, Mr. Kelley was prepared to examine witnesses at the pretrial hearing. ECF No. 16 at Exhibit 16. The Court does not find that Mr. Kelley fell short of his duty to investigate or made any unreasonable decision not to investigate. For these reasons, the Court finds that Petitioner has failed to establish an ineffective assistance claim under the first prong of *Strickland*.

For a defendant who has pleaded guilty, the prejudice prong is met by "show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Prejudice related to "a failure to investigate or discover potentially exculpatory evidence . . . depend[s] on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id.* This requires predicting "whether the evidence likely would have changed the outcome of a trial." *Id.*

Petitioner asserts that he had "no chance for a fair trial, and so in desperation [he] made a Hobson's choice to take a bad deal." ECF No. 12 at 7. However, Petitioner fails to give any reason why he would have decided to proceed to trial had Mr. Kelley conducted the investigation he requested. Whatever doubt could have been cast on the prosecution's case likely would not have been enough to overcome the overwhelming evidence against Petitioner, including Ms. Brown's statements to her neighbors and law enforcement, Deputy Steadman's testimony, the Declaration of Probable Cause, and Petitioner's criminal history.[8] Additionally, the record shows that Ms. Brown suffered injuries to multiple areas of her body, including her neck, chest, cheeks, chin, jaw, lips, left bicep, left knee,

---

[8] Petitioner's criminal history includes a felony DUI and two vehicular assault convictions. ECF No. 16 at 3.

ORDER DENYING AMENDED PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS ~ 16

and under both eyes.  ECF No. 16 at 21–22.  Given the fact that these injuries were consistent with the prosecution's version of events, it was reasonable for Mr. Kelley to recommend that Petitioner forego trial and plead guilty.

Finally, Petitioner faced a life sentence without parole if he were found guilty at trial.  By contrast, Petitioner secured a ten-year sentence by pleading guilty.  Petitioner has failed to show how this was a "bad deal," and the Court finds no reason why Petitioner would have made a different decision with different counsel.

The Court cannot find that further investigation by Mr. Kelley at Petitioner's request would have changed the calculus of whether to go to trial.  In fact, had Petitioner gone to trial with Mr. Kelley or any other counsel, it is entirely possible that he would have received a harsher punishment.  Petitioner has failed to show that he was prejudiced by Mr. Kelley's supposed failure to investigate.  Furthermore, the Court finds that Commissioner Wasson's ruling was not "contrary to, or [] an unreasonable application of, clearly established Federal law" for an ineffective assistance claim under *Strickland*.  28 U.S.C. § 2254(d).

Since Petitioner has failed to establish an ineffective assistance claim,  all that remains to scrutinize is the voluntariness of the guilty plea. On January 25, 2016, Petitioner entered an *Alford* plea and agreed to let the state court rely on the prosecution's statement of probable cause as a factual basis for the plea. ECF No.

16 at 19. Petitioner's main contention is that he "lied about [his plea] being 'free[] and voluntary'" because "[t]here was no chance for a fair trial." ECF No. 12 at 7. However, the guilty plea transcript shows that Petitioner's decision was entirely his own. ECF No. 16 at 303–10. Moreover, Petitioner had ten days between entry of the plea and his sentencing to tell the court that his plea was involuntary. Yet he did not attempt to withdraw his plea at any time. Instead, he waited to raise this claim on appeal. There is nothing in the state court record indicating that Petitioner was coerced, or that his *Alford* plea was involuntary.

**D. Sentencing Errors**

Petitioner contends that his 120-month sentence is "ridiculously excessive." ECF No. 12 at 10. Additionally, he claims that the state improperly issued consecutive sentences for the "same criminal conduct," ignored mitigating circumstances, and failed to report to the Sentencing Guideline Commission. *Id.* Federal habeas relief is limited to correcting errors in the application of federal law. 28 U.S.C. § 2254(a). It is not meant to extend to "state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Petitioner signed a plea agreement with the understanding that the prosecution was going to recommend an exceptional sentence. ECF No. 16 at 12. Furthermore, Petitioner does not allege any violation of federal law regarding his sentence. Therefore, this Court has no authority to consider whether the state

courts erred in applying state law to Petitioner's sentencing claims. *Estelle*, 502 U.S. at 67–68.

## CONCLUSION

The Court does not find that the trial court applied law that was contrary to clearly established federal law governing the four grounds for relief raised in the amended petition. Consequently, Petitioner is denied a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

When a district court denies a habeas corpus petition on the merits, rather than on procedural grounds, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court found that Petitioner's constitutional claims lacked merit based on well settled, binding authority. As a result, the Court finds no basis upon which to issue a certificate of appealability.

Accordingly, **IT IS HEREBY ORDERED:**

1. Petitioner's Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, **ECF No. 12**, is **DENIED**.
2. The Petition is **DISMISSED WITH PREJUDICE**.
3. **JUDGMENT** shall be entered for the Respondent.

**IT IS SO ORDERED**.

The Clerk of Court is directed to enter this Order, enter judgment, forward a copy to Petitioner at his last known address and close the file. The Court further certifies that pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**DATED** August 21, 2018.

>   *s/ Rosanna Malouf Peterson*
>   ROSANNA MALOUF PETERSON
>   United States District Court Judge